# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2019, 11:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ana M. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of Al.K. (Minor Child)<br><br>and<br><br>A.K. (Mother),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | July 31, 2019<br><br>Court of Appeals Case No. 19A-JT-249<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Kimberly Dowling, Judge<br><br>The Honorable Amanda Yonally, Magistrate<br><br>Trial Court Cause No. 18C02-1801-JT-1 |

**Crone, Judge.**

## Case Summary

[1] A.K. ("Mother") appeals the involuntary termination of her parental rights to her child Al.K. ("Child"). Her sole contention on appeal is that the trial court committed clear error in concluding that there is a reasonable probability that the conditions that resulted in Child's removal or the reasons for placement outside the home will not be remedied. Finding no error, we affirm.

## Facts and Procedural History

[2] The undisputed facts show that Child was born in August 2013.[1] In April 2016, the Indiana Department of Child Services ("DCS") removed Child from Mother's care and filed a petition alleging Child was a child in need of services ("CHINS").[2] The CHINS petition alleged that Mother used illicit substances, including methamphetamine and amphetamine; her recent drug screen yielded positive results for methamphetamine and amphetamine; she had four previous DCS substantiations;[3] and she was involved in one prior CHINS matter, which was closed in June 2012. Appellee's App. Vol. 2 at 2. The trial court held a CHINS detention hearing and found that there was probable cause to believe

---

[1] Mother has another older child who is not part of this case.

[2] Child's father is M.K. The trial court found that "[M.K.] has no relationship with [Child], has not visited [Child] or engaged in any services, and has expressed his desire to not have any contact or involvement with [Child] or the CHINS case." Appealed Order at 7. The trial court terminated M.K.'s parental rights, but he is not participating in this appeal.

[3] The petition does not give any details about Mother's previous DCS substantiations.

that Child was a CHINS based on Mother's drug use and that detention was necessary to protect Child. Child was placed with her paternal grandparents. In September 2016, the trial court held a continued initial hearing and ordered Mother into provisional services, including random drug screens.

[3] In November 2016, the trial court held a CHINS factfinding hearing and entered an order adjudicating Child a CHINS. In March 2017, the trial court held the dispositional hearing and subsequently entered a dispositional decree, in which it ordered Mother to participate in any programs recommended by the DCS family case manager ("FCM"); maintain suitable, safe, and stable housing; secure and maintain a legal and stable source of income; not use or consume illegal controlled substances; submit to random drug screens; complete a substance abuse assessment and follow all treatment recommendations; and attend all scheduled supervised visitation with Child, which could be changed to a hybrid visitation schedule of both supervised and unsupervised visitation at DCS's discretion. Ex. at 22-24.

[4] In October 2017, following a hearing, the trial court entered a permanency order finding that Mother had been inconsistent with visitation and noncompliant with reunification services and providing for concurrent permanency plans of adoption and reunification. Child remained with her paternal grandparents. On January 23, 2018, DCS filed a verified petition for involuntary termination of the parent-child relationship. On April 16, 2018, the trial court held a permanency hearing and issued an order changing Child's permanency plan to adoption.

[5] On July 26, September 20, and October 4, 2018, the trial court held a factfinding hearing. On January 2, 2019, the trial court issued findings of fact, conclusions of law, and order terminating parent-child relationship ("Termination Order"), which contained findings, unchallenged by Mother, that establish the following facts. Mother failed to act on DCS's initial referral for a substance abuse assessment. From June 2016 to June 2017, Jessie Wyman served as Mother and Child's FCM. In FCM Wyman's assessment, Mother's issues were homelessness, substance abuse, and unemployment. In June 2016, Mother was evicted from her apartment. Mother stayed with her mother on occasion, but FCM Wyman was unaware of where Mother was residing most of the time. To help Mother obtain housing and employment, DCS provided two referrals for home-based casework service, which Mother refused to participate in. FCM Wyman provided Mother with a second referral for a substance abuse assessment, which Mother failed to act on. Mother failed to submit to twenty-three of the forty-three drug screens requested by FCM Wyman.

[6] In June 2017, when Clark Tudor was assigned as FCM, Mother's issues regarding unstable housing, substance abuse, and unemployment had not been resolved. FCM Tudor was not aware of a permanent address for Mother. FCM Tudor provided a third referral for a substance abuse assessment, which Mother completed. Mother completed intake services at Centerstone and was assigned a counselor, but was ultimately dismissed from Centerstone because she kept only one scheduled appointment with the counselor, failed to appear

for three appointments, and cancelled one appointment. FCM Tudor then referred Mother to home-based casework services with Children's Bureau. Mother met with her assigned counselor twice but was dismissed from the service due to her lack of engagement.

[7] At the end of March 2018, FCM Tudor referred Mother to home-based casework services with Lifeline Youth and Family Services, and in April 2018, Mother began individual therapy with Katie Landherr. Mother was consistently engaged in therapy with her and made progress. Mother told Landherr that she had not been using any illicit substances and initially submitted to drug screens proved by Landherr. Later, Mother stopped agreeing to take drug screens offered by Landherr. On July 6 and August 8, 2018 Mother tested positive for methamphetamine on DCS drug screens, and she refused to take a drug screen on July 26, 2018, the first setting of the factfinding hearing. Landherr was not informed of Mother's positive drug screens with DCS. Overall, FCM Tudor obtained thirty-five drug screens from Mother; eleven were positive for methamphetamine. Mother failed to submit to twelve requested drug screens.[4] Mother regularly "used methamphetamine throughout the CHINS case." Appealed Order at 2.

[8] Mother was employed at a McDonald's in February and March of 2018. She obtained a full-time position at another McDonald's in September 2018 and

___

[4] At the termination hearing, Mother asserted her Fifth Amendment right not to incriminate herself and refused to answer whether she used methamphetamine. Tr. Vol. 2 at 115.

had been employed there for three to four months. At the time of the termination hearing, Mother was living with her mother. Mother does not have a valid driver's license and lacks transportation. Mother engaged in appropriate supervised visitation with Child, but her visitation never progressed to unsupervised visitation. Child has been with paternal grandparents since April 2016, more than two and a half years, and is thriving.

[9]     The Termination Order also contains the following conclusions:

> 94.     Although Mother has recently engaged in therapy and has maintained employment, these conditions have been recent within the past eight (8) months. Prior to April of 2018, Mother was minimally engaged in services to assist her in remedying the circumstances that led to the removal of [Child].
>
> 95.     Mother also continues to use methamphetamine and has not established stable and suitable housing for the child.
>
> ….
>
> 97.     By clear and convincing evidence, the court determines that there is a reasonable probability that the conditions that resulted in [Child's] removal and placement outside of Mother's home will not be remedied.

Appealed Order at 6-7. The trial court also concluded that termination of the parent-child relationship was in Child's best interests and that DCS had a satisfactory plan for Child's care and treatment, which included adoption. *Id*.

at 7.  Based on its conclusions, the trial court terminated Mother's parental rights.  This appeal ensued.

# Discussion and Decision

[10]     Mother seeks reversal of the termination of her parental rights.  We note that "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'"  *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016) (quoting *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005)).  "[A]lthough parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities."  *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008).  Involuntary termination of parental rights is the most extreme sanction, and therefore "termination is intended as a last resort, available only when all other reasonable efforts have failed."  *Id.*  Because "the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children," we apply a heightened standard of review to termination proceedings.  *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016) (quoting *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014)).

> In considering whether the termination of parental rights is appropriate, we do not reweigh the evidence or judge witness credibility.  We consider only the evidence and any reasonable inferences therefrom that support the judgment, and give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand.  Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial

court's findings or judgment unless clearly erroneous. [Ind. Trial Rule 52(A)]. In evaluating whether the trial court's decision to terminate parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment.

*K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229-30 (Ind. 2013) (citations and quotation marks omitted). We note that Mother does not challenge any specific findings of fact, and therefore we accept the trial court's findings of fact as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) ("Father does not challenge these findings and we accept them as true.").

[11] A petition to terminate a parent-child relationship involving a CHINS must, among other things, allege:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

Ind. Code § 31-35-2-4(b)(2). DCS must also allege that termination is in the best interests of the child. Ind. Code § 31-35-2-4(b)(2)(C). DCS must prove each element by "clear and convincing evidence." *R.S.*, 56 N.E.3d at 628; Ind. Code § 31-37-14-2. If the trial court finds that the allegations in the petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[12] Mother challenges only the trial court's conclusion that there is a reasonable probability that the conditions that resulted in Child's removal or reasons for placement outside the home will not be remedied. *See* Ind. Code § 31-35-2-4 (b)(2)(B)(i). In reviewing this determination, we engage in a two-step analysis. *K.T.K.*, 989 N.E.2d at 1231. First, "we must ascertain what conditions led to [Child's] placement and retention in foster care." *Id.* Second, we "determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quoting *In re I.A.*, 934 N.E.2d 1127, 1134 (Ind. 2010)). When the trial court makes its determination, it must evaluate a parent's fitness at the time of the termination hearing, taking into consideration evidence of changed conditions and balancing a parent's recent improvements against "habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231). "A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of

neglect, failure to provide support, and lack of adequate housing and employment." *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The trial court may consider services offered by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied.* "Where there are only temporary improvements and the pattern of conduct shows no overall progress, the court might reasonably find that under the circumstances, the problematic situation will not improve." *In re Involuntary Termination of Parent Child Relationship of A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). DCS "is not required to provide evidence ruling out all possibilities of change; rather, it need only establish 'that there is a reasonable probability that the parent's behavior will not change.'" *A.D.S.*, 987 N.E.2d at 1157 (quoting *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007)).

[13] Here, the reason for Child's removal was Mother's abuse of illegal drugs. Mother argues that she completed a substance abuse assessment, twenty-four of her thirty-five drug screens were negative, she followed the recommendation of home-based case services, her therapist testified that she was attending sessions and making progress, she was living with her mother, and she was employed. Appellant's Br. at 22. According to Mother, these accomplishments addressed DCS's concerns.

[14] Mother ignores the findings in support of the judgment. The trial court found that although Child was removed from Mother in April 2016, Mother did not

participate in services or substance abuse treatment at all, despite numerous referrals, until June 2017, when FCM Tudor took over the case. Even then, Mother's referrals at two different service providers were ultimately dismissed due to Mother's failure to participate and lack of engagement. It was not until April 2018 that Mother started to attend therapy sessions and make progress. This was just two months before the first setting of the termination factfinding hearing. Significantly, while Mother initially submitted to her therapist's drug screens, she stopped doing so. Further, her therapist was not informed of Mother's positive drugs screens with DCS. Although Mother agreed to take thirty-five drug screens offered by FCM Tudor, she tested positive for methamphetamine eleven times and refused twelve drug screens. Near the time of the first setting of the termination hearing, she tested positive for methamphetamine on July 6 and August 8, 2018, and refused a drug screen on July 26, 2018.[5]

[15] In light of Mother's historic pattern of failing to participate in services and avail herself of drug treatment opportunities, as well as her consistent drug use, the trial court could reasonably conclude that any progress made by Mother was temporary and that there was a reasonable probability that her drug abuse would not be remedied. *See A.H.*, 832 N.E.2d at 570. Balancing a parent's

---

[5] We note that recently another panel of this Court held that exhibits containing drug test results do not fall under the business records exception to the rule against hearsay. *Matter of L.S.*, 18A-JT-2881, 2019 WL 2181225, at *4 (Ind. Ct. App. May 21, 2019). However, Mother did not object to the admission of the drug screen exhibits.

recent improvements against habitual patterns of conduct is a delicate balance that is entrusted "to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *E.M.*, 4 N.E.3d at 643. Mother's argument is merely an invitation to reweigh the evidence, which we must decline. Accordingly, we find no error in the trial court's conclusion that there is a reasonable probability that the reasons for Child's removal from Mother will not be remedied. We affirm the termination of Mother's parental rights.

[16] Affirmed.

Baker, J., and Kirsch, J., concur.